## Elkhorn By-Products Coal Company, et al. v. Tynes.

(Decided February 17, 1920.)

### Appeal from Letcher Circuit Court.

1. Corporations—Subscriptions—Non-Liability for.—One who proposes to take stock in a corporation on condition that the affairs of the concern are in good shape, but who never subscribes for stock or otherwise obligates himself to take it, is not liable to the corporation or its creditors for the amount of his stock subscription, nor can he compel the corporation in which he proposed to subscribe for stock to issue stock to him.

2. Corporations—Subscriptions—Non-Liability.—Where one subscribes for stock in a corporation and afterwards but before the

stock is issued, enters into a side agreement with a third person to let said third person have one-half of the stock he receives in consideration of such third person furnishing money, and this private arrangement is unknown to the corporation, it is not liable if it issue the whole or, the stock subscriptions to an assignee of the subscriber other than said third person.

3.   Corporations—Purchasers Without Notice of Equity.—Strangers who purchase stock in a corporation or buy the entire holdings of the corporation from the legal title holder without notice of the silent equity of another, is not bound to such other for any loss which he may sustain by reason thereof.

J. C. JONES, EDWARD C. O'REAR, LEWIS A. NUCKOLS, D. D. FIELDS, D. I. DAY, H. C. FAULKNER, W. E. FAULKNER and W. A. STANFILL for appellants.

W. G. DEERING and S. M. NICKELL for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Four men, Harvie, Collins, Gorman and Reedy, organized a corporation under the laws of West Virginia styled Elkhorn By-Products Coal Company, for the purpose of developing and operating a coal lease on the headwaters of the Kentucky river in Letcher county, in the early part of the year 1916. After starting development work Collins and Harvie became dissatisfied with the management and entered into an agreement with Gorman to sell their stock to him at the price of $2,750.00 each, he to pay them $1,750.00 each in cash, and give each of them a note for $1,000.00, with Jesse Morgan as surety. This arrangement was carried out by the execution and delivery of the notes and the payment of the money, the cash being obtained by Gorman from Jouett, Bigelow & Brooks, of Cincinnati, by loan. No stock certificates had been issued by the company and Harvie and Collins assigned their interests in the company to Wheeler, trustee, supposedly for Gorman and Jesse Morgan. Harvie and Collins retired from the corporation and are not interested in this suit now, but are witnesses. The other subscribers to stock, Gorman and Reedy, began to look around for other persons to take the place of those who had withdrawn from the company. Reedy suggested the name of appellee Tynes as a suitable person to be invited to come into the corporation, and Gorman invited Jesse Morgan to take stock and become an officer in the corporation. Before this time neither Morgan nor Tynes had any interest in the

company except Morgan was the financial backer and surety of Gorman, and Tynes was the financial backer of Reedy, but neither of these sureties was officially known to the corporation. Neither Gorman nor Reedy had money sufficient to take care of their stock subscriptions, $2,500.00 each, and they had to borrow. In order to raise his part of the money Reedy entered into a written contract with Tynes on May 26, 1916, which we here copy:

"This agreement made this 26th day of May, 1916, by and between J. W. Reedy, party of the first part, and B. C. Tynes, party of the second part.

"Witnesseth, that whereas the said J. W. Reedy has assigned and transferred to certain individuals who propose to form themselves into a corporation to be known as the Elkhorn Coal Company, a certain coal lease for 178 acres of land, situate on the Boone fork of the Kentucky river, and in consideration of which assignment the said Reedy is given a bonus of two hundred and fifty ($250.00) dollars for said lease and the option to subscribe for five thousand ($5,000.00) dollars worth of stock out of a total of twenty thousand ($20,000.00) dollars authorized capital stock in said company (said two hundred and fifty ($250.00) dollars bonus mentioned to be a credit on said stock), and is assigned five thousand ($5,000.00) dollars in treasury or other stock to hold in trust for the benefit of the subscribing stockholders; and,

"Whereas, it is proposed that the said B. C. Tynes assist the said J. W. Reedy in financing and carrying the said amount of stock thus subscribed for or to be subscribed for by him.

"Now, therefore in consideration of the premises and the mutual obligations hereby assumed by each, the said J. W. Reedy does hereby assign to the said B. C. Tynes one-half of all the benefits accruing to him by virtue of the said and any agreement of assignment of said lease to the aforesaid company, and agrees to formally assign to the said B. C. Tynes, at net cost, one-half the stock certificates as issued under said or any agreement. The said B. C. Tynes agrees to put up the money from time to time to carry the said J. W. Reedy in the matter of the aforesaid stock subscription to the extent of twelve hundred and fifty ($1250.00) the amount thus furnished by the said B. C. Tynes to be secured by the promissory notes of the said J. W. Reedy, due and payable in from

twelve to eighteen months and bearing interest at the rate of six per cent per annum until paid, and further secured by stock certificates No. 39, of the Ashless Coal Corporation, of the par value of thirteen hundred ($1300.00) dollars.

"Witness our hands on the day and date above written.

                    "J. W. REEDY,
                    "B. C. TYNES.

"Witness:
    "IRA NICKELL,
    "W. H. MILLER."

This contract was made before the organization of the corporation and therefore long before Harvie and Collins withdrew from the organization and before Tynes and Morgan were invited to come in. It was a private arrangement between Reedy and Tynes, of which the corporation had no cognizance.

In the course of the work of installing the mining plant the corporation called upon the stock subscribers for money in payment of their subscriptions, and Reedy drew various drafts on Tynes, payable to the coal company in satisfaction of Reedy's assessments, but only a part of these drafts were paid and the balance were returned unpaid. The first one paid was for $250.00. Then followed a $500.00 draft which was refused payment by the bank at the direction of Tynes. Other drafts were drawn by Reedy on Tynes, and also refused by the bank. On September 3, 1916, Tynes wired the bank, "Pay no more of those drafts. See letter today's mail." The letter which followed bore the same date and was addressed to the cashier of the Perry County State Bank, at Hazard, and directed him not to pay any more drafts drawn by Reedy on account of the Elkhorn By-Products Coal Company. Up to this time Reedy had paid into the corporation on account of his stock subscription the total sum of $1,750.00; in addition he was allowed a credit of $250.00 for his interest in the lease which he and others obtained from the landowners, and $50.00 for services, making in all the sum of $2,050.00 paid by Reedy. The work at the mine was progressing very slowly and every one connected with the concern was disgusted with the delays and altogether out of humor on account of the poor management at the plant.

Early in September and shortly after the sending of the telegram and letter by Tynes above referred to,

Gorman, Reedy, Morgan and Tynes came together in the law office of Morgan in Hazard for the purpose of talking over the reorganization of the coal company and the terms and conditions upon which Tynes and Morgan would be permitted to come in as stockholders. After much discussion it was finally agreed that Morgan and Tynes should each take stock and become directors in the corporation. It was also suggested that Morgan should be made president of the company; Tynes, secretary and treasurer; Gorman, general manager, and Reedy vice president. It was then proposed by some one present that Tynes should prepare minutes of a contemplated stockholders' meeting and also of a directors' meeting of the Elkhorn By-Products Coal Company, and have them ready for a meeting which was planned for September 16th, and Tynes agreed to prepare these papers. In fact it appears that while they were together there that day the general outline was made by Tynes on paper of the minutes that should be prepared. Soon thereafter Tynes dictated such minutes as he thought would be necessary to show a meeting of the stockholders of the company and the election of directors, and another minute showing a meeting of directors and the election of the officers, as set out above. In addition to these minutes he prepared other minutes and orders affecting different subjects connected with the corporation and its management. On the 16th of September, Gorman, Morgan and Tynes (Reedy was not present) met in Tynes' office in Hazard and Tynes presented and began to read the minutes which he had prepared, whereupon Gorman objected to certain minutes or orders prepared and read by Tynes, and an argument ensued between Tynes and Gorman in which both of them became more or less wrought up, and Gorman appearing angry left the room and did not return. Then Morgan, who had agreed, on conditions, to subscribe for stock, turned to Tynes and told him in substance that he would not put a dollar into the company, and Tynes said he would have nothing more to do with the company and that he would not pay or allow the bank to pay for him, a one thousand dollars check made payable to the company on account of his proposed stock subscription and on which he had already directed the bank to refuse payment. In the meantime, either at the first meeting referred to above, or in the interval between the 11th and 16th of September, Tynes, had prepared a promissory

note payable to Jouett, Bigelow and Brooks of Cincinnati for $6,000.00, in which the Elkhorn By-Products Coal Company was principal, and he had also prepared an order of the board of directors of the company authorizing the issual of the note and the obtention of the loan, in which order Jesse Morgan was referred to as president and Tynes as secretary. The company being in a press about money, and the negotiation of this loan of pressing importance, Jesse Morgan, expecting to become president of the company, signed the note as such officer, and likewise the minutes or orders authorizing the note. In order to expedite matters Tynes, who had come in possession of the stock certificate book of the company, prepared certificates of stock made out to the four men named according to the amount paid in or proposed to be paid in by each; and Tynes, although he had not been elected either as a director or as an officer of the company, though it was contemplated he would be, signed each of said certificates as secretary. There was on these certificates a line for the signature of the president of the company, and one of these certificates made out to a bank of Hazard, as trustee, for $10,000.00, and intended to be used by the company as collateral to the $6,000.00 note to Jouett, Bigelow and Brooks of Cincinnati, was also signed by Morgan as president, but the other certificates of stock were left in the book unsigned by any one as president. It is the contention of some of the parties to this action that one or more of the minutes or orders prepared by Tynes were signed by Jesse Morgan as president, but this is denied by Morgan and several of the witnesses. However this may be, when Gorman left the meeting in Tynes' office, after a quarrel with Tynes and after Morgan and Tynes had each declared their purpose not to take stock in the corporation, nor to put any money into it, Morgan picked up such papers as he had signed as president, including the note and certificate of stock, and carried them away with him. Neither Tynes nor Morgan subscribed for any stock or became liable upon any subscription for stock to the company, or to any one else, but they did tentatively agree, while conferring about the reorganization of the company for each to take stock in the company, and Tynes went so far as to give his check for $1,000.00 in payment of his proposed subscription, but this check he directed the bank not to pay and it has never been paid. Morgan did not even go so far as to give a check, but in-

dicated he would take stock if everything was satisfactory. Later, however, he announced that he would not take stock or put any money into the corporation, and he and Tynes at that time were of one mind on the subject. Very shortly after the happening of the events recounted, Gorman proposed to purchase Reedy's interest in the corporation and they started negotiations looking to that end. Failing in this Reedy proposed to sell his interest to Gorman, and after some negotiations Reedy executed an option to Gorman to sell his entire interest in the company to Gorman at the price of approximately $2,000.00. No sooner had Gorman obtained this option than two men named Parsons and Montgomery, coal operators of West Virginia, appeared on the scene and proposed to purchase the whole company from Gorman, who then claimed to have all the stock except Reedy's, and had a binding contract for the purchase of it. A trade was soon effected between the West Virginia men and Gorman, whereby Gorman was to receive $25,000.00 for the entire stock and holdings of the company. Reedy transferred all his interest in the company by writing to Gorman. At this time Tynes, who had been financially backing Reedy, was in West Virginia and did not know what was transpiring.

When Tynes came home and learned that Gorman had sold the entire stock or interest of the company to Parsons and Montgomery he set up claim to a one-sixth of the stock of the corporation, asserting that he and Reedy were to have one-third of all the stock, and that Morgan and Gorman were each to have one-third thereof. And further that his interest in the concern was known to Gorman and to Parsons and Montgomery before the deal was negotiated. Failing to induce either Gorman or Parsons and Montgomery to transfer or cause to be transferred to him the stock he claimed, Tynes instituted this action in the Letcher circuit court against the Elkhorn By-Products Coal Company, Parsons and Montgomery, Morgan, Gorman and the First National Bank of Hazard, to require the company to issue to him 16 2/3 shares of stock, duly signed by the president and attested by the secretary, and in case this could not be done, he then prayed judgment against Gorman, Morgan, Parsons and Montgomery, for his proportionate part of the net proceeds of the sale of all the stock made by Gorman to Parsons and Montgomery, and also for $5,000.00 damages for fraud alleged to have

been perpetrated upon him. Issue was joined, and a great volume of evidence taken on each side. After a hearing the chancellor granted Tynes practically all the relief he sought and the defendant coal company, et al., appeal.

We have rather fully reviewed the evidence, because the decision of this case very largely rests upon the determination of questions of fact. These questions are rendered difficult by reason of conflict and difference in the testimony of several of the principal witnesses testifying on either side and which witnesses are of high character and good reputation. This conflict has augmented the task of reading and re-reading this great volume of evidence.

The chancellor made a finding of fact in which was included a finding that Tynes was a subscriber to stock and had become and was, at the time of the sale of this company to Parsons and Montgomery, a director and officer in the corporation; that the certificates of stock found in the book had been duly signed by the officers of the company, including Morgan as president, and that the minutes of the stockholders' and directors' meetings of the corporation had been duly signed by said officers. His finding of fact is entitled to great consideration by this court but it is not conclusive and will not be so regarded unless sustained by the weight of the evidence.

It is the contention of Tynes on this appeal that he and Reedy carried out fully their preliminary agreement, copied above, with reference to the sale by Reedy and purchase by Tynes of one-half of Reedy's stock before the stockholders' and directors' meetings on September 11th and 16th, 1916, and before the attempt of Gorman and Morgan to transfer all the stock of the corporation to Parsons and Montgomery, and this transfer was attached to and entered upon the books and minutes of the corporation, and the legal and equitable title to the stock became absolutely in Tynes, and further that it is immaterial whether Tynes had at first a mortgage or owned the stock absolutely.

This contention would be tenable if the evidence established the fact that Reedy had actually assigned and transferred one-half of his interest in the company, or its stock, with the company's knowledge, to Tynes before or at the alleged meetings of stockholders on September 11th and 16th, but this does not satisfactorily appear. While it is manifest from the record that

Tynes, Morgan, Reedy and Gorman met at the law office of Morgan in Hazard for the purpose of talking over the proposal to take in new stockholders and reorganize the company and that these four men, after much discussion, tentatively agreed that Morgan and Tynes might or would subscribe for stock and become stockholders and officers in the company, the fact remains that neither Tynes nor Morgan subscribed for stock or signed any writing obligating themselves to take any number of shares of stock or making themselves liable to the corporation on account of any stock subscription whatever, except that Tynes gave his check for $1,000.00 to the company on his proposed subscription. That Tynes and Morgan contemplated at that time the taking of stock in the corporation is reasonably certain, but it is manifest from all the evidence and the circumstances surrounding the parties on the occasions mentioned in evidence that these two proposed stockholders would come in only on condition that the affairs of the company were shown to be in a satisfactory condition; and further that its management in the future should have thrown around it the protection of such rules in the form of by-laws as would safeguard the expenditure of money in the installation and operation of the plant, and the liability of Tynes and Morgan as stockholders, or as subscribers to stock in the company, could not and did not attach or become effective until they assumed an obligation to pay for such stock. This they did not do. Neither of them was bound to take stock in the company or to pay money for the use and benefit of the company except as surety, if indeed in this wise. As between themselves these proposed stockholders were not bound upon any proposed subscription of stock until there was a meeting of the minds of the several parties. Gorman and Reedy were the only subscribers to stock and it was optional with them whether they would take in either Morgan or Tynes, and, of course, Tynes and Morgan might have refused to take stock in the company; but when the four talked it over it was the opinion of all that matters could be so adjusted and the company so reorganized and conducted as to be satisfactory to those concerned, and they all set to work to bring about these conditions. The minutes and by-laws had not been prepared by Tynes, except in outline, and only a part in this wise. The balance were vaguely suggested but not agreed upon. When they were written up and proposed by Tynes, Gorman

absolutely refused to accept them, or to allow Tynes to come into the corporation with such by-laws. Tynes was unwilling to come into the corporation unless the proposed by-laws or by-laws in substance the same were adopted by the company. On this rock the proposed reorganization split. Gorman withdrew from the meeting, leaving only Morgan and Tynes, who each declared their intention to have nothing further to do with the corporation. So the reorganization did not in fact take place. Tynes refused to pay his check for $1,000.00 which he had given the company in payment for stock. By this act he waived his right, if any he had, to stock under his proposed subscription. If the company had accepted the check on his proposed subscription to stock and Tynes had not forbidden the bank to pay the check and the corporation had received the use and benefit of the money of Tynes thus paid on the check, his position would have been much better, and his claim to the stock much stronger than it is under the facts presented. He is now suing to compel the company to issue to him a certificate of stock which he deliberately refused to accept or to pay for, and this is the test by which we are to determine his right to the relief which he asks in his petition.

There was in fact no reorganization of the corporation, nor of the stockholders or board of directors; at most it was an abortive attempt to get together and rejuvenate the corporate entity. Accepting Tynes' version of the facts, the reorganization was not real but merely a partly consummated paper entity into which the breath of life had not been breathed. The four men at the meeting of September 11th, and the three men at the meeting on the 16th, were not acting for or on behalf of the company, but as individuals dealing with each other, and neither was bound until all were bound.

Never having become bound to the company or to either of the appellants, to take stock in the corporation, Tynes never was in position to maintain an action for specific performance either against the company or Gorman and Morgan. He had and has a cause against Reedy if Reedy violated the trust created by the private arrangement between him and Reedy, and he may be fully recouped, if he has suffered a loss even to the subjecting of the collateral attached to the note.

In addition to the oral evidence which supports the above conclusions of fact and law, a letter of Tynes, written to Gorman on September 19, 1916, only three days

after the meeting on September 16th, when Tynes claims he became a subscriber to stock, clearly shows that the minds of Tynes and Morgan had not met the minds of Gorman and Reedy with respect to the stock subscriptions, and, therefore, there was no binding obligation. This letter from Tynes to Gorman informs Gorman that Tynes had talked the subscription matter over with Morgan, and Tynes was of the opinion that a plan had been suggested which would bring order out of chaos and give Gorman a free reign in the management of the affairs at the plant, while at the same time protecting Reedy and himself as minority stockholders should they become such. Morgan, however, declined to act upon the suggestion but preferred to wait until he could talk the matter over with Gorman, thus showing that Morgan was not consenting to the arrangement. As evidence that Tynes had not accepted the stock and was not bound by his proposed subscription, he wrote in this letter in substance, "I have instructed the bank not to pay the $1,000.00 check, and I ask you not to embarrass yourself and the company further by presenting it." This is the same $1,000.00 check that Tynes refused to pay at the meeting on the 16th of September, and which he had theretofore instructed the bank not to pay. But as though he wanted to put it beyond doubt that he was not a subscriber to stock and was not bound on any subscription therefor, Gorman in his letter adds the following: "I think you and I are not far apart in our notions," which is but to say that we have not yet agreed but we are close to an agreement and may finally agree. Continuing he says, "As soon as you and Mr. Morgan and *we can agree*" about the reorganization, which is an admission that up to that time, September 19th, no such an agreement had been reached between Gorman and Morgan, Reedy and Tynes; and in the same line he writes in substance: "As soon as you, Mr. Morgan and we can effect a legal organization," which is an admission that no legal reorganization had been effected; and finally he says: "When all these things are done Mr. Reedy and I are ready to pay in our cash," by which Mr. Tynes undoubtedly meant that until an agreement was reached and a legal organization effected, he was unwilling to pay in his cash or to become a stockholder in the company. These admissions are of such a nature as to have a very far reaching effect upon the evidence of Mr. Tynes.

Reedy made a valid subscription for \$2,500.00 worth of stock in the corporation and he was bound on it. He had paid only \$1,750.00 in cash on this subscription. A part of this was furnished by Tynes but it was furnished to Reedy and paid by Reedy on his stock subscription of \$2,500.00, and not upon any subscription of Tynes. As between Tynes and Reedy, Tynes was entitled to one-half of any stock subscribed for and received by Reedy, but this private arrangement between Reedy and Tynes did not affect the corporation and it had no interest whatever in it, for it must be borne in mind that Reedy contracted to assign and transfer to Tynes one-half of all the benefits which came to him, which was an acknowledgment that the corporation would be liable only to Reedy who in turn was to convey an interest to Tynes. Later, however, Tynes talked the matter over with the other stockholders with a view to purchasing stock in the corporation, but while these persons in the main thought they had entered into an arrangement they had not in fact done so, because their minds had not met and no agreement had been reached. There can be no binding obligation where the contracting parties misunderstand one another, and for this reason there was no meeting of the minds, and this is exactly the situation in which Tynes, Gorman, Morgan and Reedy were on September 16th.

The private arrangement between Tynes and Reedy whereby Reedy agreed to convey to Tynes a one-half interest in whatever stock or benefits Reedy received from the corporation, was wholly unknown to Parsons and Montgomery at the time of the purchase by them of the stock from Gorman. This is made clear by the evidence of Gorman, Parsons, Montgomery and Morgan. At most Reedy, the legal title holder, was trustee for Tynes, as between the two, but this condition was not known to the corporation nor to the purchasers, Parsons and Montgomery, and their rights were therefore, not affected by the dormant and unknown interest of Tynes.

It, therefore, follows that Tynes was not entitled to the relief prayed in his petition and the court was in error in adjudging him entitled to 16 2/3 shares of the capital stock of the Elkhorn By-Products Coal Company, as well as all other relief granted.

The judgment is reversed with directions to dismiss the petition.